**CORRECTED**

# In the United States Court of Federal Claims
### OFFICE OF SPECIAL MASTERS
No. 19-0944V
UNPUBLISHED

| | |
|---|---|
| LEANNE ROTH,<br><br>    Petitioner,<br>v.<br><br>SECRETARY OF HEALTH AND HUMAN SERVICES,<br><br>    Respondent. | Chief Special Master Corcoran<br><br>Filed: August 31, 2021<br><br>Special Processing Unit (SPU); Decision Awarding Damages; Pain and Suffering; Influenza (Flu) Vaccine; Shoulder Injury Related to Vaccine Injury (SIRVA) |

*Bridget Candace McCullough, Muller Brazil, LLP, Dresher, PA,* for Petitioner.

*Andrew Henning, U.S. Department of Justice, Washington, DC,* for Respondent.

### DECISION AWARDING DAMAGES[1]

On June 28, 2019, Leanne Roth filed a petition for compensation under the National Vaccine Injury Compensation Program, 42 U.S.C. §300aa-10, *et seq.*[2] (the "Vaccine Act"). Petitioner alleges that she suffered from a shoulder injury related to vaccine administration ("SIRVA") as a result of an influenza ("flu") vaccine she received on October 20, 2017. Petition at 1. The case was assigned to the Special Processing Unit of the Office of Special Masters.

For the reasons discussed below, and after hearing argument from the parties, I find that Petitioner is entitled to compensation in the amount of $59,046.30, representing $58,000.00 for actual pain and suffering, plus $1,046.30 for past unreimbursed expenses.

---

[1] Although this Decision has been deemed unpublished, it will be posted on the United States Court of Federal Claims' website, in accordance with the E-Government Act of 2002. 44 U.S.C. § 3501 note (2012) (Federal Management and Promotion of Electronic Government Services). **This means the Decision will be available to anyone with access to the Internet**. In accordance with Vaccine Rule 18(b), Petitioner has 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy. If, upon review, I agree that the identified material fits within this definition, I will redact such material from public access.

[2] National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755. Hereinafter, for ease of citation, all section references to the Vaccine Act will be to the pertinent subparagraph of 42 U.S.C. § 300aa (2012).

## I.     Relevant Procedural History

Approximately 16 months after this case was initiated, Respondent filed his Rule 4(c) report on October 23, 2020, conceding that Petitioner was entitled to compensation. ECF No. 19. A ruling on entitlement was issued on October 28, 2020. ECF No. 20. After a period of negotiation, the parties were able to resolve only the sum for past unreimbursed out-of-pocket expenses to be paid to Petitioner. ECF No. 26. The parties accordingly filed briefs setting forth their respective positions on the disputed damages element. ECF Nos. 30 ("Br.") and 31 ("Opp."). I subsequently proposed that the parties be given the opportunity to argue their positions at a motions hearing, at which time I would decide the disputed damages issues. ECF. No. 32. That hearing was held on August 27, 2021,[3] and the case is now ripe for a determination.

## II.    Relevant Medical History

A complete recitation of the facts can be found in the Petition, the parties' respective pre-hearing briefs, and in Respondent's Rule 4(c) report.

In brief summary, Ms. Roth received the flu vaccine in her left shoulder on October 20, 2017 at a CVS Pharmacy in Carpinteria, California. Ex. 1 at 1. Prior to her vaccine, Petitioner had no history of pain, inflammation, or dysfunction specific to her left shoulder. *See* Ex. 2. Then, on November 15, 2017 (26 days after vaccination), Ms. Roth presented to her primary care provider with complaints of left shoulder pain since receiving the flu vaccine. Ex. 2 at 26-28. She described "sharp exquisite pain during the injection," and "severe pain in arm at the injection site the day following." *Id.* Ms. Roth was told to ice her shoulder and to use NSAIDs, and she was referred to physical therapy. *Id.*

Petitioner underwent an initial physical therapy evaluation on December 4, 2017. Ex. 3 at 2-5. She was diagnosed with an injury secondary to injection at the site of the superficial muscle, which resulted in numbness, pain, decreased strength, and decreased range of motion (ROM). *Id.* at 4. Ms. Roth reported her pain as tending toward severe, rating it 2/10 at best, and 10/10 at worst. *Id.* at 2.

An x-ray performed on December 27, 2017 was normal. Ex. 2 at 62. At her annual exam on March 14, 2018, approximately five months after vaccination, Ms. Roth reported

---

[3] At the end of the hearing held on August 27, 2021, I issued an oral ruling from the bench on damages in this case. That ruling is set forth fully in the transcript from the hearing, which is yet to be filed with the case's docket. The transcript from the hearing is, however, fully incorporated into this Decision.

her shoulder had improved 50%, but she still suffered limitations from her injury, including sleep disruption. Ex. 2 at 29.

Ms. Roth completed a total of 21 physical therapy sessions between December 4, 2017 and June 28, 2018. *See* Ex. 3. Some of these occurred after Petitioner maintains she reaggravated her injury. Ex. 3 at 8-48. Petitioner stated that she had exhausted her insurance benefits for physical therapy and paid for additional sessions out-of-pocket until she could no longer afford them. Ex. 6 at ¶12. Petitioner described physical therapy as "necessary, but really, really painful," noting that she "was in tears every single time." *Id.* Ms. Roth did not treat her SIRVA after June 28, 2018. She received no other medical interventions for her injury.

Although Ms. Roth's ability to engage in her favorite recreation activities, such as bike riding and country dancing, was curtailed due to the injury, she was able to resume participation after treatment. *See* Ex. 6 at ¶9 (Petitioner was able to resume country dancing by end of 2018); ¶12 (Petitioner could ride her bike by July 4, 2018).

### III. The Parties' Arguments

#### a. Petitioner

Ms. Roth seeks an award in the total amount of $76,036.40 consisting of $75,000.00 as compensation for her pain and suffering, plus $1,036.40 for past unreimbursable medical expenses (a sum that Respondent does not contest). Br. at 7. To support her pain and suffering request, Petitioner stressed that her SIRVA injury caused her severe pain for an extended duration and caused her several personal hardships. *Id*. at 5-6. She explained that she was unable to use her left arm for daily activities, like washing her hair or reaching for her phone. *Id*. Petitioner noted that she is "a single individual" and "did not have any assistance with her activities of daily living." *Id.* Finally, Ms. Roth missed out on her favorite recreational activities, including country dancing, gardening, and bike riding. *Id.*

During the hearing and in her brief, Petitioner discussed prior SIRVA cases that involved injured claimants with similar fact patterns, and thus argued that an award of $75,000.00 was reasonable and appropriate given that her circumstances were comparable. Br. at 6-8.

### b. Respondent

Respondent maintains that a pain and suffering award of only $45,000.00 is appropriate, because of the overall limited scope and nature of Ms. Roth's injuries. Opp. at 1, 11. Respondent argued that Ms. Roth's medical records reflect that she sustained a "mild" SIRVA injury that required "relatively conservative treatment." *Id*. at 5. She declined referral to an orthopedist, never had an MRI, and never received a steroid injection. *Id.* Respondent further argued that Ms. Roth attended only five PT sessions through April 2018, when she "re-aggravated her shoulder" during her nannying job, a separate injury that caused the need for additional physical therapy treatment thereafter. *Id.* at 5-6.

Respondent distinguished Petitioner's cited prior SIRVA cases, but did not offer any prior damages decisions to support his proposed award. Opp. at 8-10. Instead, he argued that I should take into account the average award for pain and suffering for shoulder injuries in a sample of 55 traditional tort cases from other courts outside of the Vaccine Program. *Id.* at 7; Appendix A. Respondent argued that the average award of $33,089.93 represents a comparable injury to Petitioners. *Id*. At the hearing, Respondent acknowledged that the Vaccine Compensation Program is intended to be generous in arguing for an award of $45,000.00, which is higher than the average cited. He further argued that because Ms. Roth had a conservative course of treatment and re-aggravated her shoulder injury during her employment, her award should be lower than the prior SIRVA cases cited by Petitioner.

### IV.   Legal Standard

Compensation awarded pursuant to the Vaccine Act shall include an award "[f]or actual and projected pain and suffering and emotional distress from the vaccine-related injury, an award not to exceed $250,000." Section 15(a)(4). Additionally, a petitioner may recover "actual unreimbursable expenses incurred before the date of judgment award such expenses which (i) resulted from the vaccine-related injury for which petitioner seeks compensation, (ii) were incurred by or on behalf of the person who suffered such injury, and (iii) were for diagnosis, medical or other remedial care, rehabilitation . . . determined to be reasonably necessary." Section 15(a)(1)(B). Petitioner bears the burden of proof with respect to each element of compensation requested. *Brewer v. Sec'y of Health & Human Servs.*, No. 93-0092V, 1996 WL 147722, at *22-23 (Fed. Cl. Spec. Mstr. Mar. 18, 1996).

There is no precise formula for assigning a monetary value to a person's pain and suffering and emotional distress. *I.D. v. Sec'y of Health & Human Servs.*, No. 04-1593V, 2013 WL 2448125, at *9 (Fed. Cl. Spec. Mstr. May 14, 2013) ("Awards for emotional distress are inherently subjective and cannot be determined by using a mathematical

formula"); *Stansfield v. Sec'y of Health & Human Servs.*, No. 93-0172V, 1996 WL 300594, at *3 (Fed. Cl. Spec. Mstr. May 22, 1996) ("the assessment of pain and suffering is inherently a subjective evaluation"). Factors to be considered when determining an award for pain and suffering include: 1) awareness of the injury; 2) severity of the injury; and 3) duration of the suffering. *I.D.*, 2013 WL 2448125, at *9 (quoting *McAllister v. Sec'y of Health & Human Servs.,* No 91-1037V, 1993 WL 777030, at *3 (Fed. Cl. Spec. Mstr. Mar. 26, 1993), *vacated and remanded on other grounds*, 70 F.3d 1240 (Fed. Cir. 1995)).

A special master may also look to prior pain and suffering awards to aid in the resolution of the appropriate amount of compensation for pain and suffering in each case. *See, e.g.*, *Doe 34 v. Sec'y of Health & Human Servs.*, 87 Fed. Cl. 758, 768 (2009) (finding that "there is nothing improper in the chief special master's decision to refer to damages for pain and suffering awarded in other cases as an aid in determining the proper amount of damages in this case."). And, of course, a special master may rely on his or her own experience adjudicating similar claims. *Hodges v. Sec'y of Health & Human Servs.*, 9 F.3d 958, 961 (Fed. Cir. 1993) (noting that Congress contemplated the special masters would use their accumulated expertise in the field of vaccine injuries to judge the merits of individual claims). Importantly, however, it must also be stressed that pain and suffering is not determined based on a continuum. *See Graves v. Sec'y of Health & Human Servs.*, 109 Fed. Cl. 579 (2013).

### V.     Appropriate Compensation in this SIRVA Case

#### a.  Awareness of Suffering

Awareness of suffering is not typically a disputed issue in cases involving SIRVA – and it does not appear to be disputed herein. Thus, based on the circumstances of this case, I find that Ms. Roth had full awareness of her suffering, and proceed to analyze the severity and duration of the injury.

#### b.  Severity and Duration of Pain and Suffering

With respect to the severity and duration of the injury, Ms. Roth's medical records and affidavits provide a description of the pain she experienced throughout the duration of her injury. As noted, Ms. Roth endured 21 physical therapy sessions, which she described as "really, really painful." Ex. 6 at ¶12. However, Ms. Roth did not seek treatment from an orthopedist, an MRI was never obtained, no cortisone injection was given, and no surgery was recommended. All of the above suggest that the appropriate award in this case is "below median" – and indeed neither side has requested that the pain and suffering component to be awarded should exceed $100,000.00.

After reviewing the record in this case and considering the parties' arguments during the hearing, I find that the re-aggravation argued by Respondent was *not* an injury separate from Petitioner's SIRVA. In my experience adjudicating such claims, a person with a SIRVA injury will often have sensitivity when attempting to engage in activities of daily living, including employment, that might make the injury a bit worse at times. I therefore find that all 21 physical therapy sessions were treatment for Petitioner's SIRVA.

Another factor to consider in awarding an amount for pain and suffering is the loss of enjoyment of daily life activities. Ms. Roth stated that she had been unable to engage in her favorite recreational activities, such as country dancing and bike riding. While Ms. Roth was hindered in those activities for a period of time, it appears that Ms. Roth was able to resume those activities by the end of 2018. Ex. 6 at ¶9, 10.

In addition, I note that Ms. Roth stopped treating her shoulder pain, other than with home exercises, and was largely recovered within eight months of vaccination as she admits in her affidavit. All of these factors will play a role in the amount awarded for Ms. Roth's pain and suffering. *See e.g. Dagen v. Sec'y of Health & Human Servs.,* No. 18-0442V, 2019 WL 7187335, at *10 (Fed. Cl. Nov. 6, 2019)(awarding $65,000 for pain and suffering following a SIRVA where Petitioner's pain was fairly significant in the first two months post-vaccination, but progressively eased in the ensuing period, with her movement impairment also largely (though not totally) improved within seven months of vaccination"); *Knauss v. Sec'y of Health and Human Servs.*, No. 16-1372, 2018 WL 3432906 at * 7 (Fed. Cl. Spec. Mstr. May 23, 2018) (awarding $60,000 for pain and suffering following a SIRVA wherein petitioner sought treatments three months post-vaccination, underwent 15 physical therapy sessions, received a steroid injection, and ultimately reported a 94 percent recovery).

Under such circumstances and considering the arguments presented by both parties at the hearing, a review of the cited cases, and based on the record as a whole, I find that **$58,000.00** in compensation for past pain and suffering is reasonable and appropriate in this case.

### c. Award for Past Unreimbursed Expenses

Ms. Roth requests $1,046.30 in past unreimbursable expenses. Br. at 7. Respondent does not dispute this sum, and therefore Petitioner is awarded this sum without adjustment.

## VI.    CONCLUSION

In light of all of the above, the I award **Petitioner a lump sum payment of $59,046.30,** (representing $58,000.00 for Petitioner's actual pain and suffering and $1,046.30 for unreimbursable medical expenses) **in the form of a check payable to Petitioner, <u>Leanne Roth</u>.** This amount represents compensation for all damages that would be available under Section 15(a) of the Vaccine Act. *Id*.

The clerk of the court is directed to enter judgment in accordance with this decision.[4]

**IT IS SO ORDERED.**

<u>s/Brian H. Corcoran</u><br>
Brian H. Corcoran<br>
Chief Special Master

---

[4] Pursuant to Vaccine Rule 11(a), entry of judgment can be expedited by the parties' joint filing of notice renouncing the right to seek review.